IN THE COURT OF CRIMINAL APPEAL S OF TENNESSEE
AT NASHVILLE

Assigned on Briefs June 17, 2024

## STATE OF TENNESSEE v. JAMIE REBECCA RYAN

**Appeal from the Circuit Court for Bedford County**
**No. 19442     Forest A. Durard, Jr., Judge**

_____

### No. M2023-01251-CCA-R3-CD

_____

Defendant, Jamie Rebecca Ryan, pleaded guilty in Bedford County Circuit Court to one count of possession of 0.5 grams or more of methamphetamine with intent to sell, a Class B felony. The parties agreed to an eight-year sentence, with the manner of service of sentence left to the trial court's discretion. Following a sentencing hearing, the trial court ordered Defendant to serve her full sentence in the custody of the Tennessee Department of Correction (TDOC), consecutive to a five-year sentence for a prior unrelated offense. On appeal, Defendant argues the trial court abused its discretion in ordering Defendant to serve a sentence of full incarceration and in imposing consecutive sentences. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., AND JOHN W. CAMPBELL, SR., JJ., joined.

Taylor Payne, Murfreesboro, Tennessee, for the appellant, Jamie Rebecca Ryan.

Jonathan Skrmetti, Attorney General and Reporter; Lacy Wilber, Senior Assistant Attorney General; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Background

### A. Guilty Plea

On June 20, 2022, the Bedford County Grand Jury indicted Defendant, Jamie Rebecca Ryan, for: possession of 0.5 grams or more of methamphetamine with intent to sell (Count 1); possession of 0.5 grams or more of methamphetamine with intent to deliver (Count 2); and casual exchange of heroin (Count 3). On March 20, 2023, Defendant pleaded guilty pursuant to a plea agreement to Count 1, with the State dismissing the other two counts of the indictment. The parties agreed Defendant would be sentenced to eight years as a Range I, standard offender, and be assessed a fine of $2,000. The manner of service for Defendant's sentence was left to the discretion of the trial court, and Defendant would remain on bond pending the sentencing hearing.

On July 24, 2023, the trial court entered an order revoking Defendant's bond; the order stated that "Defendant . . . received on July 20, 2023, a new charge of possession of Schedule II [controlled substance] for resale, pending sentencing." The trial court held a sentencing hearing in the present case on August 10, 2023.

### B. Sentencing Hearing

At the beginning of the sentencing hearing, the trial court, upon motion of the State, incorporated by reference "the facts that were read into the record at the time of the plea acceptance hearing[.]" The transcript from the plea hearing does not appear in the record. In reviewing the presentence report, this court gleans the following facts of the underlying offense: On March 19, 2020, agents with the Seventeenth Judicial District Drug Task Force executed a search warrant on the residence of Cindy Smith. Ms. Smith, Defendant, and Bryan Davis were present when the agents arrived. All three persons were found with methamphetamine; the presentence report indicates that 0.36 grams of methamphetamine was found in Defendant's purse, while the return of the search warrant, which is in the appellate record, states that three bags of suspected methamphetamine were found in Defendant's lap. In a statement given in advance of the presentence report, Defendant claimed Mr. Davis gave her these three bags when he went to check the door when the agents knocked.

At the sentencing hearing, Shane George, director of the task force, acknowledged that methamphetamine usage was "hands down" the "number one drug problem" in the Seventeenth Judicial District at the time of Defendant's offense. Director George explained that methamphetamine was "readily available," "cheap," and "coming into our

area literally by the bucket loads." He acknowledged that his task force had investigated "thousands" of cases involving methamphetamine during his twenty-three years with the task force. He testified that in his encounters with methamphetamine users and dealers, "the incarceration aspect of the punishment is probably the main factor that altered the course of their life." Director George testified that several persons had "thanked us . . . as the Drug Task Force[,] for stopping that cycle and incarcerating them and getting them away from the drug and off the streets."

Director George testified that the task force had continue to investigate Defendant after she committed the offense in the instant case. He explained that on March 3, 2023, the task force "conducted a Parole/Probation search of [Defendant]'s trailer[.]" Defendant, her boyfriend, and a third man were present. Agents found Defendant "in possession of about an ounce of crystal methamphetamine" and found more methamphetamine in a bedroom. Defendant admitted to the agents that she "had just sold $100 worth of crystal methamphetamine" to the third man present at the time agents arrived; the third man had seen the agents approaching and attempted to hide the methamphetamine he had just purchased. The third man confirmed Defendant's version of events to the investigating agents.

Director George testified that on July 20, 2023, task force agents went to a restaurant to arrest Defendant for the March 3, 2023 incident. When the agents reached the restaurant, they first arrested Defendant's boyfriend, who was in Defendant's vehicle. After searching Defendant's vehicle, the agents found roughly half an ounce of methamphetamine. Defendant and her boyfriend both admitted to the agents that "they had reinvolved themselves in the distribution of crystal methamphetamine." As of the sentencing hearing, Defendant had not been charged in connection with the recovery of drugs from her vehicle in July 2023.

Director George testified that after Defendant's arrest in this case, the task force used her as a confidential informant. She conducted one controlled purchase, but she was not used as an informant thereafter. Director George explained that task force agents often had trouble contacting her, and when contacted she was uninterested in the proposed work.

The presentence report ("PSR") introduced at the sentencing hearing indicated that Defendant had a lengthy criminal history that began in September 2009, shortly after her eighteenth birthday. Defendant had eighteen prior convictions for offenses including drug possession, drug paraphernalia possession, casual exchange, failure to appear, and introducing contraband into a penal facility. All but two of Defendant's prior convictions were for misdemeanor offenses, and Defendant's sentences for at least twelve of these offenses were suspended at least in part. Defendant violated probation three times for a 2015 misdemeanor conviction possession of drug paraphernalia; after the third violation,

her probation was revoked in full. She also violated probation once following a 2017 simple possession conviction in Bedford County.

Defendant's first felony conviction was a 2017 Franklin County conviction for introducing contraband into a penal facility. At the time of Defendant's guilty plea, she was sentenced to three years, suspended to 120 days in jail and the rest of the term on probation. She violated probation four times for this offense; after her second and third offenses she received some jail time, and after the fourth violation her probation was revoked in full. Her second felony conviction, for possession of Schedule I drugs, resulted from a 2018 offense in Bedford County. Defendant pleaded guilty to that offense after she committed the offense that is the subject of the instant case.

The PSR also reflects that Defendant had committed and pleaded guilty to several other charges before and after she committed the instant offense. In 2019, Defendant was indicted in Bedford County case number 19092 for felony drug possession charge referenced above; this offense was committed in June 2018, and she pleaded guilty to the offense in August 2020. She received a sentence of five years imprisonment at a service rate of thirty percent. A notation on the entry for this offense on the PSR notes this sentence would be consecutive "to any other sentence." On April 4, 2019, she failed to appear in Bedford County General Sessions Court; she was not convicted of this offense until September 2020. In 2020, she was charged in Coffee County[1] with possession of methamphetamine, casual exchange and other "undefined" drug offenses for an offense which occurred October 6, 2018; she pleaded guilty to casual exchange and simple possession in April 2022.

In her sentencing-hearing allocution, Defendant stated she was "aware of the multiple chances [she had] previously squandered," took "accountability for [her] actions," and said, "I'm not trying to get out of jail today, I do deserve a sentence to serve." Defendant "request[ed] mercy on the length of the total sentence if possible" and stated that "if granted one more chance" she would "not make the same mistakes" but "do probation and . . . be successful[.]"

After considering the evidence and the arguments of counsel, the trial court ordered Defendant to serve her sentence in the custody of TDOC, denying Defendant's request for full probation or split confinement. The trial court found the Defendant had a lengthy history of convictions, including two felony convictions. The trial court observed that Defendant's "social history is not very stellar," adding "after consumption of this amount of illegal substances I don't know how she could be too good as far as mental condition."

---

[1] It is unclear from the record whether Defendant's Coffee County indictment was returned before she committed the instant offense.

The trial court also observed that Defendant had a considerable history of sentences less than full confinement, and she had been generally unsuccessful on these sentences. Specifically, the Defendant violated probation four times for one conviction, three times for another conviction, and once for a third conviction. The court also found Defendant's potential to reoffend was significant given her lengthy criminal history and prior failed attempts at probation. The trial court acknowledged Director George's testimony about incarceration being a deterrent, but the trial judge noted that "when you keep seeing the same people in a revolving door after they have been to prison or been incarcerated . . . sometimes the [c]ourt questions if these people even care whether they go to jail or not." The trial court emphasized it was not relying on deterrence alone in denying probation, as "there [was] too much other evidence" to justify denial of probation.

The trial court sentenced Defendant to eight years imprisonment. The court found that because Defendant was released on bond for her 2018 Bedford County conviction for possession of Schedule I drugs at the time she committed the current felony drug offense, consecutive sentencing was mandatory. The court ordered the eight-year sentence to be served consecutively to Defendant's five-year Bedford County sentence.

## II. Analysis

We review the length and manner of service of within-range sentences imposed by trial court "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). Specifically, our supreme court has stated this standard also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

To be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable common law factors. *King*, 432 S.W.3d at 327-28. But as this court has observed:

> [T]rial courts need not comprehensively articulate their findings concerning sentencing, nor must their reasoning be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. Instead, the trial court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority." *Id.*

*State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at \*4 (Tenn. Crim. App. Apr. 12, 2023) (some alterations in original), *no perm. app. filed.*

In short, the trial court's sentencing decision will be upheld on appeal "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. A defendant bears the burden of proving the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the PSR; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and 114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made on the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the Department of Correction and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103. The sentence imposed should be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4). "Appellate courts may not disturb the sentence even if we had preferred a different result." *State v. Burns*, No. W2021-00939-CCA-R3-CD, 2023 WL 334659 at \*7 (Tenn. Crim. App. Jan. 20, 2023) (citing *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2007)).

## A. Absence of Guilty Plea Submission Hearing Transcript

As stated above, the transcript of Defendant's guilty plea submission hearing does not appear in the record. "[A] transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed." *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). As the State observes in its brief, our supreme court has stated that "when a record does not include a transcript of the hearing on a guilty plea," this court "should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*." *Caudle*, 388 S.W.3d at 279. In this case, the parties agreed upon the sentence length for this offense, and the only issue to be resolved after Defendant's guilty plea was the manner of service of her sentence and

its alignment with the prior sentence. The trial court's denial of probation and imposition of consecutive sentences was based largely on Defendant's criminal history and her lack of success during her prior probationary sentences, factors which would not have relied on the circumstances surrounding the current offense. Accordingly, we conclude that the record is sufficient to address Defendant's appellate issues.

## B. Probation

Generally, probation is available to a defendant whose actual sentence imposed is ten years or less, and his or her underlying offense is not excluded by law. Tenn. Code Ann. § 40-35-303(a). However, no criminal defendant is entitled to a presumption of probation, and no defendant is automatically entitled to probation as a matter of law. *Carter*, 254 S.W.3d at 347; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must prove his or her suitability of alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

When addressing a defendant's suitability for probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

As an initial matter, we note that at the sentencing hearing the trial court stated that Defendant's prior convictions would have qualified her to be sentenced as a Range II, multiple offender for this offense. However, the parties agreed she would receive a Range I sentence of eight years for this conviction—the minimum Range I sentence for a person convicted of a Class B felony. *See* Tenn. Code Ann. §§ 39-17-417(c)(1) (possession of 0.5 grams or more of methamphetamine with intent to sell is Class B felony), 40-35-112(a)(2) (Range I sentence for Class B felony is eight to twelve years). The trial court stated, and

on appeal the State contends, that because Defendant's prior record qualified her as a Range II offender, she was not eligible to be considered a favorable candidate for probation. However, despite the Defendant's record of convictions, the parties agreed to, and the trial court imposed, a Range I sentence, so the trial court's reasoning is inapplicable on this issue. However, Defendant was still not a favorable candidate for probation, as our criminal code makes clear that only "an especially mitigated or standard offender *convicted of a Class C, D, or E felony*, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (emphasis added). Because Defendant pleaded guilty to a Class B felony, she could not be considered a favorable candidate for alternative sentencing. And as stated above, under Tennessee law no defendant is entitled to a presumption of probation.

Defendant argues that the trial court "failed to appropriately consider the presentence report" in ordering Defendant to serve her full sentence in custody. Specifically, Defendant asserts the trial court "failed to fully consider . . . the validated risk and needs assessment." At the sentencing hearing, the prosecutor said that he did not "put a lot of stock in" the "Strong-R" risk and needs assessment completed as part of the PSR in this case, but the assessment indicated Defendant had "an overall high risk to re-offend for drug related offenses." In imposing Defendant's sentence, the trial court stated:

> We have the Strong R, which I feel like the General does on that, that is a self-reported questionnaire that TDOC takes and they put it in some data base and it spits out an answer. The usefulness of that to the court is just not much. It is like the case we had earlier today where this person was -- their risk and needs I assume stemming from the Strong R said minimal, so they got to meet twice a year and random drug screens maybe. I don't think this defendant got drug screens, and it was just a joke. I really do not put a great deal of stock in that.

The trial court's comments regarding the Strong-R assessment might have been ill-advised, but we agree with the State that the comments reflect that the court did consider the assessment as required by statute. As Defendant acknowledges in her brief, "the weight to be assigned to the assessment falls within the trial court's broad discretionary authority in the imposition of sentences." *State v. Ailey*, No. E2017-02359-CCA-R3-CD, 2019 WL 3917557, at *31 (Tenn. Crim. App. Aug. 19, 2019) (quotation omitted). The trial court did not place much, if any, weight on the assessment, as it was its prerogative under the law.

There was ample evidence to support the trial court's denial of probation and ordering Defendant to serve her sentence in custody. Our review of the trial court's comments during sentencing shows that the trial court considered the required principles

of sentencing before imposing sentence. Of note, Defendant had a lengthy history of criminal convictions, including two felony convictions and at least fifteen misdemeanor convictions. Defendant had been sentenced to probation several times in the past, but her performance on probation had been poor, as she had repeatedly violated. Given Defendant's extensive criminal record and her failure to comply when not incarcerated, her amenability to correction was low. Accordingly, we conclude the trial court did not abuse its discretion in denying probation and ordering Defendant to serve her sentence in custody. She is not entitled to relief on this issue.

### D. Consecutive Sentences

Defendant argues the trial court erred in imposing consecutive sentences. We disagree.

The abuse of discretion standard adopted in *Bise* also applies to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013); *see also* Tenn. R. Crim. P. 32(c)(1) (stating that the trial court, in ordering consecutive sentencing, "shall specify the reasons for this decision"). The trial court must find by a preponderance of the evidence that one of the statutory classifications for consecutive sentencing exists. *See* Tenn. Code Ann. § 40-35-115(b). As relevant to this case, Tennessee Rule of Criminal Procedure Rule 32(c)(2)(A)(i) provides:

> If the defendant has additional sentences not yet fully served as the result of convictions in the same court or in other courts of Tennessee and if this fact is made known to the court prior to sentencing, the court shall recite this fact in the judgment setting sentence, and the sentence imposed is deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively to the prior sentence or sentences. The judgment to make the sentences consecutive or concurrent shall explicitly relate the judge's reasons and is reviewable on appeal.

In certain instances, the trial court is required to impose consecutive sentences. Rule 32(c)(3) of the Tennessee Rules of Criminal Procedure provides, in relevant part:

> When a defendant is convicted of multiple offenses from one trial or when the defendant has additional sentences not yet fully served as the result of convictions in the same or other courts and the law requires consecutive

sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not. This rule shall apply:

> . . . .
> (C) To a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses . . . .

Tenn. R. Crim. P. 32(c)(3)(C). Additionally, Tennessee Code Annotated section 40-20-111(b) provides:

> In any case in which a defendant commits a felony while the defendant was released on bail . . . and the defendant is convicted of both offenses, the trial judge shall not have discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively.

Tenn. Code Ann. § 40-20-111(b).[2]

As stated above, Defendant committed the offense in the current case on March 19, 2020. According to the PSR, in 2019, Defendant had been charged in Bedford County Circuit Court case number 19092 for possession of Schedule I drugs. The date of that offense was June 9, 2018, but the conviction in that case was not entered until August 27, 2020—after Defendant committed the offense in the current case. The prosecutor argued that based on these facts, "mandatory consecutive sentencing . . . applies, she would have been on bond for that, bond for a felony she was ultimately convicted of." In imposing consecutive sentences, the trial court stated that "she was certainly on bond" when she committed the current offense. Accordingly, the trial court stated, "I think that mandates consecutive sentences." However, there was no proof introduced into the record to substantiate the State's assertion that Defendant was on bond when she committed the current offense. Defendant committed the current offense after committing the offense in Bedford County case number 19092 but before this other case was resolved, so a conclusion that Defendant was on bond when she committed the current offense seems reasonable. However, the statements of counsel are not evidence, and we cannot presume Defendant's bond status at the time of the current offense from a silent record. Thus, to any extent the trial court ordered the sentence in this case to be served consecutively to the

---

[2] Rule 32(c)(3)(A) also requires the imposition of consecutive sentences when a person commits a "felony committed while on parole for a felony." Evidence of Defendant's parole status at the time of this offense was unclear, although the parties and court suggested at the sentencing hearing that Defendant did not commit the current offense while on parole. The PSR indicated Defendant was on parole at the time of the sentencing hearing.

- 10 -

sentence in case number 19092 based on Defendant's purported bond status when she committed the current offense, that conclusion was erroneous.

However, the trial court also stated it was imposing consecutive sentences based on Code section 40-35-115(b)(2), which provides, "The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is an offender whose record of criminal activity is extensive." When evaluating whether the proof establishes that a defendant is an offender whose record of criminal activity is extensive, trial courts may consider the following list of non-exclusive factors:

> (1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;
> (2) The time span over which the criminal activity occurred;
> (3) The frequency of criminal activity within that time span;
> (4) The geographic span over which the criminal activity occurred;
> (5) Multiplicity of victims of the criminal activity; and
> (6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (footnotes omitted).

In imposing consecutive sentences based on Defendant's extensive criminal history, the trial court stated:

> Even if the [c]ourt were to be in error on that, the [c]ourt would find that [Defendant] is an offender whose record of criminal activity is extensive. We are talking about [two] felonies and [six] different misdemeanor violations in her record. And so even people who have no felony record but have an extensive misdemeanor record can fall under this section of having criminal activity which is extensive. And in this case it is not as extensive as some, but it is more extensive than a lot of other cases. Ten of what I just mentioned involved simple possession or casual exchange, and [three] of those involve drug paraphernalia, which I bet was associated with [three] of those [ten] I just mentioned.

The evidence produced at sentencing supports the trial court's conclusion that Defendant had an extensive record of criminal activity. As stated throughout this opinion, before committing this offense Defendant had committed at least fifteen misdemeanor

offenses and two felony offenses in ten-and-a-half years. Defendant asserts that the trial court erred in imposing consecutive sentences because most of her convictions were for misdemeanors, but as our supreme court has stated, "Trial courts can consider prior misdemeanors in determining whether a defendant has an extensive record of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2) does not distinguish between felonies and misdemeanors." *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013). And while not explicitly stated by the trial court in imposing consecutive sentences, we note that the PSR reflects that the conviction in Bedford County case number 19092 would run consecutive "to any other sentence." This too supports the trial court's decision. In sum, we conclude the trial court did not abuse its discretion in ordering Defendant's sentence in this case to be served consecutively to the sentence in Bedford County case number 19092.

### III. Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
MATTHEW J. WILSON, JUDGE